CLEVELAND LEE, SR.,

        Plaintiff,

    v.                                        Case No. 18-cv-1959-pp

CATHY JESS, *et al.*,

        Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 28, 33), DISMISSING UNSERVED DEFENDANTS AND DISMISSING CASE**

        Plaintiff Cleveland Lee, Sr., is a former prisoner who is representing himself. He filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights when they failed to grant him early release under a statutory scheme that was enacted after he was sentenced and was repealed before he was released. See Dkt. Nos. 1, 29, 34. The plaintiff sued nine defendants: Cathy Jess, Maureen Kumlin Roberts, Mary Martin, Maria Pruitt, Jon E. Litscher, Edward Wall, Gary H. Hamblin, Matthew J. Frank, and Rick Raemisch. Dkt. No. 1. On March 26, 2019, Frank, Hamblin, Jess, Litscher and Martin (the State defendants) filed their answer to the plaintiff's complaint. Dkt. No. 14. That same day, Wall filed his answer. Dkt. No. 13.

        On April 2, 2019, the court referred the case to Magistrate Judge William Duffin to handle pretrial matters. Dkt. No. 16. On September 30, 2019, Judge Duffin noted that Roberts, Pruitt and Raemisch had not appeared. Dkt. No. 25

1

at 1. He also noted that the plaintiff had provided no proof that he had properly served those defendants. Id. Judge Duffin explained that, "[b]ecause no service appears to have been effected within the [required] period, Federal Rule of Civil Procedure 4(m) and Civil Local Rule 41(a) allow the court to dismiss [the plaintiff's] claims against Roberts, Pruitt and Raemisch without prejudice." Id. at 2. Judge Duffin gave the plaintiff a deadline of October 25, 2019 to file proof that he had timely served Roberts, Pruitt and Raemisch. Id. He warned the plaintiff that, if he did not file that proof, the court would dismiss those defendants without prejudice. Id.

According to the court's records, the plaintiff never has filed proof that he timely served Roberts, Pruitt and Raemisch, nor did he provide a written explanation of why he was unable to do so. The court will dismiss Roberts, Pruitt and Raemisch without prejudice based on the plaintiff's failure to timely serve them.

On November 12, 2019, the State defendants filed a motion for summary judgment. Dkt. No. 28. That same day, Wall filed a motion for summary judgment.[1] Dkt. No. 33.

---

[1] The plaintiff questions whether Wall's summary judgment motion was timely. Dkt. No. 38 at 2. He points out that only the State defendants requested an extension of the dispositive motion deadline; Wall did not. In a text-only order issued on October 16, 2019, Judge Duffin granted the State defendants' motion to extend the dispositive motion deadline. Dkt. No. 27. He extended "[t]he deadline by which **the parties** may file a dispositive motion . . . " to November 12, 2019. Id. (emphasis added). Because Judge Duffin's order extended the deadline for all parties, Wall's motion, filed on November 12, was timely.

## I. RELEVANT FACTS

The plaintiff was incarcerated by the Wisconsin Department of Corrections (DOC) from November 16, 2005 until July 24, 2012, when he was released to extended supervision; he was discharged from supervision in 2018. Dkt. No. 30 at ¶¶1, 49-50; Dkt. No. 44 at ¶¶1, 49-50. At different times during the plaintiff's incarceration, Jess, Litscher, Hamblin, Frank and Wall served as Secretary of the Wisconsin DOC. Dkt. No. 30 at ¶2; Dkt. No. 44 at ¶2; Dkt. No. 36 at ¶1; Dkt. No. 39 at ¶1. Roberts was an institution registrar and Martin was the Kettle Moraine Correctional Institution records supervisor during the plaintiff's incarceration. Dkt. No. 30 at ¶3; Dkt. No. 44 at ¶3.

In 1998, the Wisconsin Legislature adopted a truth-in-sentencing statutory scheme that established a determinate sentencing system requiring anyone convicted of committing a felony on or after December 31, 1999, to serve a bifurcated sentence consisting of a definite term of confinement in prison, followed by a definite term of extended supervision in the community. Dkt. No. 30 at ¶13; Dkt. No. 44 at ¶13. Almost six years later, on August 19, 2005, a jury found the plaintiff guilty on fifteen counts of forgery, fraud and theft. Dkt. No. 30 at ¶¶15-16; Dkt. No. 44 at ¶¶15-16. The judge sentenced the plaintiff to various concurrent sentences, resulting in a seven-year term of initial confinement followed by six years of extended supervision. Id. The crimes underlying two of the counts for which the judge sentenced the plaintiff occurred before the truth-in-sentencing law. Dkt. No. 30 at ¶¶31-32; Dkt. No. 44 at ¶¶31-32. On those two counts the judge sentenced the defendant to an

3

indeterminate sentence of seven years in state prison (in other words, the judge did not sentence the plaintiff under the truth-in-sentencing law on those two counts). Dkt. No. 30 at ¶33; Dkt. No. 44 at ¶33. The judge sentenced the plaintiff under the truth-in-sentencing law on the remaining thirteen counts.

In 2009, the Wisconsin Legislature enacted a statutory scheme that afforded prisoners serving determinate sentences opportunities for early release. Dkt. No. 30 at ¶22; Dkt. No. 44 at ¶22. Known as Act 28, the law became effective on October 1, 2009. Id.; 2009 Wis. Act 28. Under Act 28, the Wisconsin Parole Commission, which was renamed the Earned Release Review Commission (ERRC), was in charge of approving positive time adjustment (*i.e.*, early release) for eligible sentences. Dkt. No. 30 at ¶23; Dkt. No. 44 at ¶23. The plaintiff's sentence on the two counts for which the judge imposed an indeterminate sentence was not eligible for positive time adjustment under Act 28, but the sentence on the remaining thirteen counts was. Dkt. No. 30 at ¶34; Dkt. No. 44 at ¶34.

In July 2011, the Legislature enacted 2011 Wis. Act 38, which repealed the early release provisions of Act 28 effective August 3, 2011. Dkt. No. 30 at ¶24; Dkt. No. 44 at ¶24. After the Legislature repealed Act 28, inmates generally could no longer earn positive time adjustment. Dkt. No. 30 at ¶27; Dkt. No. 44 at ¶27.

On May 9, 2011, a few months before the Legislature repealed Act 28, former DOC employee Daniel Ehlert (who is not a defendant) completed the plaintiff's Act 28 computation paperwork. Dkt. No. 30 at ¶37; Dkt. No. 44 at

4

¶37. The plaintiff had a hearing before the ERRC scheduled for July 2011 to determine whether he was entitled to positive time adjustment time under Act 28. Dkt. No. 30 at ¶38; Dkt. No. 44 at ¶38. After the Legislature repealed Act 28, the July 2011 hearing was canceled.[2] Dkt. No. 40 at ¶¶40, 42; Dkt. No. 44 at ¶¶40, 42. The ERRC never reviewed the plaintiff's sentence for positive time adjustment under Act 28. Dkt. No. 30 at ¶42; Dkt. No. 44 at ¶42.

In 2013, the plaintiff filed a *certiorari* action in Milwaukee County Circuit Court (Case No. 2013-cv-6447), claiming he was entitled to early release from extended supervision under Act 28. Dkt. No. 30 at ¶46; Dkt. No. 44 at ¶46. The circuit court rejected the plaintiff's claim, and the Wisconsin Court of Appeals affirmed. Id. In 2016, the plaintiff filed a *habeas* proceeding in Milwaukee County Circuit Court (Case No. 2016-cv-8841), claiming that the refusal to grant his early release under Act 28 violated federal and state prohibitions against *ex post facto* laws. Dkt. No. 30 at ¶47; Dkt. No. 44 at ¶47. The circuit court rejected his claim, explaining that he never was entitled to receive the benefit of the statute and that neither the enactment of Act 28 nor its repeal impacted his punishment. Id. The court denied the plaintiff's motion for reconsideration, and the appellate court summarily dismissed his untimely appeal. Dkt. No. 30 at ¶48; Dkt. No. 44 at ¶48.

---

[2] It is not clear who canceled the hearing, but, according to the State defendants, Karen Kussman (who is not a defendant) was serving as the unofficial interim Records Administrator at that time, and, on July 20, 2011, she sent an email to all Offender Records Supervisors, directing them to "VOID all remaining Review Month Set Events in WICS for Act 28 review." Dkt. No. 30 at ¶41.

5

In 2018, the plaintiff filed a petition for writ of *habeas corpus* in federal court, claiming that the repeal of Act 28 illegally delayed his release from supervision. Dkt. No. 30 at ¶49; Dkt. No. 44 at ¶49. While that case was pending, the plaintiff finished his sentence and discharged from supervision. Id. On August 21, 2018, because the plaintiff was no longer in the custody of the State of Wisconsin, the federal court dismissed his *habeas* case as moot. Dkt. No. 30 at ¶¶49-50; Dkt. No. 44 at ¶¶49-50.

**II. DISCUSSION**

  A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

6

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Analysis

1. *Rooker-Feldman and Claim Preclusion*

The State defendants argue that the plaintiff's claims turn on a single issue: whether he was entitled to early release based on a positive time adjustment under Act 28. Dkt. No. 29 at 6. According to the State defendants, because this issue has already been litigated and resolved in state court, his claims are barred by the Rooker-Feldman doctrine. Id.

The Rooker-Feldman doctrine is named after two U.S. Supreme Court cases: Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). "The Rooker-Feldman doctrine requires district courts to dismiss, for lack of jurisdiction, any request for federal review of a state court's decision . . . ." Cobbs v. Chiapete, 770 F. App'x 282, 283 (7th Cir. 2019). This is because, in civil cases like this one, only the Supreme Court may review the final decision of a state court. Id. Merely disagreeing with the state court's decision is not enough to bring the doctrine into play; the state court's decision must be the actual cause the complained-of harm. Id. at 283-84. In other words, when the complained-of harm can be

7

alleviated only by undoing the state court's decision, the Rooker-Feldman doctrine instructs that only the Supreme Court can provide relief. Id. at 284. However, "when state courts deny a request for relief, rather than imposing independent injury, the law of prelusion (res judicata or collateral estoppel), not an absence of jurisdiction, supplies the rule of decision." Id. (citing Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005) (citing with approval the approach taken by the Seventh Circuit in GASH Assoc. v. Vill. of Rosemont, Ill., 995 F.2d 726, 727-28 (7th Cir. 1993))).

The state court decided that the refusal to grant the plaintiff early release under Act 28 did not violate federal and state prohibitions against *ex post facto* laws. The plaintiff disagrees with the state court's decision. Dkt. No. 43 at 4-8. But his disagreement with that decision is not enough to bring the Rooker-Feldman doctrine into play. The plaintiff's alleged injury is that his sentence was not shortened as he says Act 28 required. He asked the state court to provide him the relief he wanted (to shorten his sentence); the state court declined to do so. The court's decision did not *cause* the alleged harm; it failed to remedy the alleged harm. As explained above, the Seventh Circuit has clarified that under these circumstances, the law of preclusion guides the district court's decision.

"Wisconsin follows the normal rule that one suit is enough; disagreement with the outcome, or the presentation of a new legal theory, does not permit a litigant a second bite at the apple." Cobbs, 770 F. App'x at 284 (citations omitted). Specifically, under Wisconsin law, the satisfaction of three factors

8

determines whether a claim is precluded by a prior decision: "(1) [there is] identity between the parties or their privies in the prior and present suits; (2) [the] prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) [there is] identity of the causes of action in the two suits." Lechnir v. Wells, 157 F. Supp. 3d 804, 808 (E.D. Wis. 2016). Here, as will be explained below, all three factors are satisfied.

### a. Privity of Parties

In his 2016 *habeas* case, the plaintiff sued Jon Litscher, who was then the DOC Secretary. See Wisconsin Circuit Court Access, available at https://wcca.wicourts.gov/case.html (search: Case No. 2016CV8841). In this case, in addition to suing Litscher, the plaintiff sues other former DOC Secretaries as well as two other DOC employees. Under Wisconsin law, employees who are sued individually for acts they performed as part of their job duties are considered to be in privity with the state. Lechnir, 157 F. Supp. 3d at 809 (citing N. States Power Co. v. Bugher, 189 Wis.2d 541, 551-52 (1995)); see also, Froebel v. Meyer, 217 F.3d 928, 933-34 (7th Cir. 2000) (explaining that under Wisconsin preclusion law, state officials are viewed as identical to the agency they work for when complaints against them concern only their actions as employees of the agency). Also, under Wis. Stat. §895.46, "[i]f the defendant in any action or special proceeding is a public officer or employee and is proceeded against . . . as an individual because of acts committed while carrying out duties as an officer or employee . . . the judgment as to damages

9

and costs entered against the officer or employee . . . shall be paid by the state or political subdivision of which the defendant is an officer or employee."

In both the *habeas* case and this case, the plaintiff seeks to bind the state (or, more specifically, the DOC). Had he prevailed in the *habeas* case, the state (not Litscher personally) would have had to release the plaintiff, and, if he were to prevail in this case, the state (not the individual defendants) would have to pay whatever money damages the court might award. The fact that the plaintiff sued additional state officials in this case doesn't undermine the conclusion that the parties are in privity because suing state officials is the mechanism by which the plaintiff is seeking to force the state to do something (release him early and pay him damages). See, *e.g.*, Lechnir, 157 F. Supp. 3d at 809 (citing N. States Power Co., 189 Wis.2d at 552); see also, Froebel v. Meyer, 217 F.3d 928, 933-34 (7th Cir. 2000). Accordingly, the court concludes that the parties are in privity for purposes of claim preclusion.

                b.      Prior Judgment on the Merits and Identity of Causes of Action

There is no dispute that the *habeas* case resulted in a judgment on the merits. Dkt. No. 30 at ¶¶47-48; Dkt. No. 44 at ¶¶47-48. As to the identity of the causes of action, Wisconsin follows the transactional approach in making that determination. Lechnir, 157 F. Supp. 3d at 809. The question is "whether the two lawsuits arise from the same transaction or set of facts." Id. They clearly do. Both cases arise from the plaintiff's contention that Act 28 required the DOC to shorten his sentence. Accordingly, there is an identity of causes of action.

10

Case 2:18-cv-01959-PP   Filed 04/30/20   Page 10 of 14   Document 49

Because all three claim preclusion factors have been met, the court concludes that the plaintiff's claims in this case are precluded.

### 2. *Personal Involvement*

Even if the plaintiff's claims were not precluded by the state court's decision in the *habeas* case, the court would grant the defendants' motions because the plaintiff has provided no evidence from which a jury could reasonably conclude that any of the defendants were personally involved in the decision to not apply Act 28 to his sentence. Under 42 U.S.C. §1983, a plaintiff may sue only those individuals who were personally involved in the alleged constitutional violation. Colbert v. City of Chi., 851 F.3d 649. 657 (7th Cir. 2017). A person's role as a supervisor is not a sufficient basis for liability. The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. The supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (quoting Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." Jones, 856 F.2d at 992.

The plaintiff does not dispute the following facts: (1) on May 9, 2011, DOC employee Daniel Ehlert completed the plaintiff's Act 28 paperwork; DOC employee Carol Ridgely proofed Ehlert's calculations (neither Ehlert nor Ridgely are defendants); (2) someone (it is unclear who) scheduled the plaintiff for a hearing before the ERRC; (3) the ERRC was in charge of approving early release

11

under Act 28; (4) the Wisconsin Legislature rescinded Act 28; and (5) after the Legislature rescinded Act 28, Karen Kussman (who is not a defendant) emailed all Offender Records Supervisors and told them to cancel all hearings scheduled for Act 28 reviews.

The undisputed facts show that none of the defendants were involved in the decision not to adjust the plaintiff's sentence under Act 28. The plaintiff doesn't allege (let alone provide evidence to support a conclusion) that any of the defendants were members of the ERRC or the Wisconsin Legislature, and he concedes that the order to cancel his hearing in front of the ERRC came from Kussman, who is not a defendant. In fact, he provides no evidence from which a reasonable jury could conclude that any of the defendants even *knew* about the plaintiff's sentence calculation, let alone that they were involved in declining to adjust it under Act 28.[3]

Trying to establish Wall's involvement (an argument that presumably the plaintiff would say applies to all the DOC Secretaries he sues), the plaintiff asserts that the plaintiff "was under the authority and welfare of Edward Wall, Secretary of Wisconsin Department of Corrections." Dkt. No. 40 at ¶8. But this is the type of argument that the Seventh Circuit routinely finds to be without merit. See Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (explaining

---

[3] The plaintiff does not dispute that Roberts (whom the court dismissed because the plaintiff never properly served her) computed the plaintiff's sentence and calculated his release date and that Martin proofed and approved Roberts' calculations; however, they did so in *2006*, three years *before* Act 28 was enacted. Dkt. No. 30 at ¶20; Dkt. No. 44 at ¶20.

12

"that public employees are responsible for their own misdeeds but not for anyone else's" and "that there is no general duty of rescue").

The plaintiff also seems to argue that a DOC Secretary's role in the inmate complaint system demonstrates his or her personal involvement in whatever alleged violation an inmate raises in an inmate complaint. See Dkt. No. 39 at ¶6. The Seventh Circuit has consistently held that this argument fails. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (explaining that not everyone who knows about a violation of the Constitution and fails to cure it has violated the Constitution him/herself). In short, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." Id.

The court will grant the defendants' motions and dismiss the case because the plaintiff's claims are precluded by the decision reached by the state court in the plaintiff's *habeas* case, and, even if they were not, no jury could reasonably conclude that any of the defendants were personally involved in the alleged violation of the plaintiff's rights.

### III. CONCLUSION

The court **DISMISSES** without prejudice defendants Maureen Kumlin Roberts, Maria Pruitt and Rick Raemisch based on the plaintiff's failure to properly serve them.

The court **GRANTS** the defendants' motions for summary judgment. Dkt. Nos. 28, 33. The court **DISMISSES** this case and will enter judgment accordingly.

13

Case 2:18-cv-01959-PP   Filed 04/30/20   Page 13 of 14   Document 49

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**